IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Northrop Grumman Systems Corporation,

Plaintiff,

v.

National Aeronautics and Space Administration,

Defendant.

Civil Action No. _____

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING
ORDER AND MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

Page

STATEMENT OF THE CASE.................................................................................. 2

    A.    NGAS's ███████ ........................................................................ 3

    B.    NASA's Intended Disclosure of NGAS's ███████ ........................................... 5

ARGUMENT ........................................................................................................ 7

    A.    Plaintiff Has Standing to Sue ..................................................................... 7

    B.    The Court Has the Authority to Grant the Relief Requested ................................ 8

    C.    Plaintiff Meets the Legal Criteria for Preliminary Injunctive Relief ..................... 9

        1. Northrop Grumman Systems Corporation is Likely to Succeed on the
           Merits .......................................................................................... 9

            a.    The Legal Standard for Determining Confidentiality of
                  Information Under FOIA Exemption 4 ........................................ 10

            b.    NGAS's ███████ are exempt from release under the
                  National Parks test, as their release is likely to cause
                  substantial competitive harm to NGAS. ...................................... 12

            c.    The release of NGAS's ███████ likely will cause NGAS
                  significant competitive harm ...................................................... 15

            d.    ████████████████████████████████
                  ████████████████████. ...................................... 17

            e.    ███████ at issue are not hypothetical examples;
                  rather, they are ███████ ......................................... 20

            f.    ████████████████████████████. ................... 21

        2.    Northrop Grumman Will Suffer Irreparable Harm if Disclosure
              Occurs. ...................................................................................... 22

        3.    Issuance of the Injunctive Relief Requested Will Have No Adverse
              Effect on Any Other Party. ............................................................. 24

        4.    Issuance of the Injunctive Relief Requested Will Have No Adverse
              Effect on the Public Interest ............................................................ 24

CONCLUSION .................................................................................................. 25

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Association of Data Processing Serv. Org. v. Camp,*
397 U.S. 150 (1970)................................................................................................7

*Camp v. Pitts,*
411 U.S. 138 (1972)................................................................................................8

*Canadian Commercial Corp. v. Dep't of Air Force,*
514 F.3d 37 (D.C. Cir. 2008).............................................................................10, 12

*Chrysler Corp. v. Brown,*
441 U.S. 281 (1979), *earlier judgment aff'd in part, vacated in part and
remanded sub. nom. Chrysler Corp. v. Schlesinger,* 611 F.2d 439 (3d Cir.
1979)....................................................................................................................7, 8

*Cityfed Financial Corp. v. Office of Thrift Supervision,*
58 F.3d 738 (D.C. Cir. 1995)..................................................................................9

*CNA Fin. Corp. v. Donovan,*
830 F.2d 1132 (D.C. Cir. 1987).............................................................................11

*Critical Mass Energy Project v. Nuclear Regulatory Comm'n,*
975 F.2d 871 (D.C. Cir. 1992) *(en banc)*...............................................................11

*General Electric Co. v. Dept. of Air Force,*
648 F.Supp.2d 95 (D.D.C. 2009)......................................................................10, 11

*Greenberg v. FDA,*
803 F.2d 1213 (D.C.Cir.1986)..............................................................................15

*Honeywell Info. Sys., Inc. v. National Aeronautic & Space Admin.,*
Nos. 76-353 (D.D.C. 1976)...................................................................................24

*McDonnell Douglas Corp. v. Air Force,*
375 F.3d 1182 (D.C. Cir. 2004).......................................................................14,16

*McDonnell Douglas Corp. v. NASA,*
180 F.3d 303 (D.C. Cir. 1999).......................................................................*passim*

*Megapulse, Inc. v. Lewis,*
672 F.2d 959 (D.C. Cir. 1982)................................................................................7

*Nat'l Parks & Conservation Ass'n v. Morton,*
    498 F.2d 765 (D.C. Cir. 1974) .................................................................................8, 11, 12

*National Org. for Women, Washington, D.C. Chapter v. Social Security Admin.,*
    736 F.2d 727 (D.C. Cir. 1984) ...............................................................................................8

*Public Citizen Health Research Group v. Federal Drug Admin.,*
    704 F.2d 1280 (D.C. Cir. 1983) .............................................................................................8

*Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n,*
    259 F.2d 921 (D.C. Cir. 1958) ...............................................................................................9

*WMATA v. Holiday Tours,*
    559 F.2d 841 (D.C. Cir. 1977) ...............................................................................................9

*Worthington Compressors, Inc. v. Costle,*
    662 F.2d 45 (D.C. Cir. 1981), *request for mod. denied sub. nom. Worthington
    Compressors, Inc. v. Gorsuch,* 668 F.2d 1371 (D.C. Cir. 1981) ...............................................7

**Statutes**

5 U.S.C. § 552(b)(4) .......................................................................................................10

5 U.S.C. § 702, 705, 706...........................................................................................7, 8, 9

5 U.S.C. § 706.................................................................................................................8

18 U.S.C. § 1905.......................................................................................................10, 11

In this "reverse" Freedom of Information Act ("FOIA") case, Plaintiff Northrop Grumman Systems Corporation ("Northrop Grumman" or "NGSC") seeks injunctive relief to prevent Defendant National Aeronautics and Space Administration ("NASA" or "Agency") from disclosing Northrop Grumman's confidential pricing information.  Because disclosure would cause immediate, irreparable harm to Northrop Grumman, Northrop Grumman files these motions for a temporary restraining order and preliminary injunction to request the Court enjoin NASA from disclosing this highly sensitive pricing information before the Court reaches a decision on the merits.

On March 24, 2017, NASA notified Northrop Grumman Aerospace Systems ("NGAS"), a major business sector of NGSC, that in response to a FOIA request from the FOIA Group, Inc.[1] (the "Requestor"), NASA had been asked to release Contract No. NAS5-02200 (the "Contract"), concerning NGAS's work on the James Webb Space Telescope.  By letter dated April 7, 2017, NGAS objected to release of certain trade secret and confidential commercial or financial information incorporated into the Contract and its attachments.   NGAS identified this information and proposed appropriate redactions to the Contract and its attachments.  In its letter, NGAS provided detailed factual and legal reasoning to support the redaction of its confidential pricing information, among other things, as exempt from disclosure under FOIA.  As it relates to this case, NGAS objected to disclosure of its ███████████████████████████ ████████████████████████████████████████████████████████████████████████

---

[1]     NASA later learned that the Requestor was the FOIA Group, Inc.  The FOIA Group, Inc. is a commercial organization that requests information through FOIA on behalf of its clients, and claims to service the "information requirements of many Fortune 100 companies," including government contractors. *See* http://www.foia.com/about.aspx.  Upon information and belief, the FOIA Group, Inc. represents one of NGAS's competitors in its pursuit for disclosure of the Contract and NGAS's pricing information therein.

██████████████████████████

Over NGAS's objections and despite the substantial competitive harm NGAS will suffer from release of this information (if not enjoined by the Court), NASA sent NGAS a Notice of Intent to Release Information on August 30, 2017, denying NGAS's request to exempt ████ ██████████████ from disclosure. The Notice of Intent to Release Information purported to be a Final Agency Action and indicated NASA's intent to release NGAS's confidential pricing information to the Requestor (and the likely NGAS competitor working through the Requestor) on September 15, 2017.

Release of NGAS's confidential and proprietary ████████ would cause substantial and irreparable harm to NGAS's competitive position in many current and upcoming procurements. Northrop Grumman respectfully requests the Court issue a Temporary Restraining Order and Preliminary Injunction enjoining NASA from disclosing its trade secret, confidential and proprietary information before this Court reaches a decision on the merits of this case.

## STATEMENT OF THE CASE[2]

The case involves NASA's stated intent, in response to a FOIA request, to disclose the Agency's Contract with NGAS for the James Webb Space Telescope, including Northrop Grumman's confidential pricing information contained within the Contract. ████████ of the Contract sets forth ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████  ████████████████████

---

[2]   Plaintiff has appended to this Memorandum declarations from ████████████, ████ ████████, and ████████████, employees of NGAS, in support of this Memorandum.

█████████████████████████████████████ ██

██████████████ provides a specific example of how ███████████████████████

█████████████████████████████ *Id.* NGAS objects to disclosure of ████████████

████████████████ on the basis that █████████████████ contained therein constitutes trade

secret and confidential commercial or financial information exempt from disclosure under

Exemption 4 of FOIA, and release of this information would cause substantial irreparable harm

to NGAS's competitive position.  NASA's final agency action deciding to disclose ███████████

████ is arbitrary, capricious, and otherwise not in accordance with law.

A.    ████████████████████





███████████████████████████████████████████████████████

████████████

**B.     NASA's Intended Disclosure of** ████████████████

After receiving FOIA Group, Inc.'s request for disclosure of the Contract under FOIA on February 10, 2017, NASA provided NGAS the opportunity to object to the release of any information in the Contract exempt from release under FOIA.  In its response, NGAS set forth factual and legal bases for redacting and exempting from disclosure ███████████████

████████████████ NGAS noted:



For these reasons, NGAS objected to the disclosure of ████████████ as trade secrets and confidential commercial or financial information, the disclosure of which would cause

substantial harm to NGAS.

On August 30, 2017, NASA issued its Notice of Intent to Release Information denying NGAS's objections.  With regard to ▮▮▮▮▮▮▮▮▮▮ NASA concluded that it was "highly unlikely this information would result in competitive harm if released now" because (1) ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ; (2) the clause was inserted at contract formation, and therefore, according to NASA, could not contain ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ; and (3) ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ NASA also provided a lengthy discussion of the uniqueness of the James Webb Space Telescope, which NASA assured was a "once in a generation" program. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ As discussed in more detail below, ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ NASA further assumed, erroneously, that release would cause no competitive harm to NGAS because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ . On these bases, NASA concluded NGAS had not demonstrated that release of its confidential and proprietary ▮▮▮▮▮ is likely to cause substantial competitive harm to NGAS.

NASA identified its Notice of Intent to Release Information as a "FINAL AGENCY ACTION" and indicated it would release the Contract including ▮▮▮▮▮▮▮▮ on

September 15, 2017.

On September 14, 2017, NGAS sent a letter to NASA reiterating and expanding on its detailed factual and legal analysis. NASA has not responded to NGAS's letter.

## ARGUMENT

### A. Plaintiff Has Standing to Sue

Plaintiff's standing to bring this reverse FOIA action is well-settled. The Administrative Procedure Act, 5 U.S.C. § 702, provides:

> a person suffering legal wrong because of agency action, or adversely affected or aggrieved by an agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

The United States Supreme Court has held that a federal agency's decision to release data submitted by a private party entitles that party to judicial review. *Chrysler Corp. v. Brown*, 441 U.S. 281, 317-18, n. 47 (1979), *earlier judgment aff'd in part, vacated in part and remanded sub. nom. Chrysler Corp. v. Schlesinger*, 611 F.2d 439 (3d Cir. 1979); *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 965-66, n. 30 (D.C. Cir. 1982); *Worthington Compressors, Inc. v. Costle*, 662 F.2d 45, 49 (D.C. Cir. 1981), *request for mod. denied sub. nom. Worthington Compressors, Inc. v. Gorsuch*, 668 F.2d 1371 (D.C. Cir. 1981).

This view is consistent with the Supreme Court's criteria for standing in *Association of Data Processing Serv. Org. v. Camp*, 397 U.S. 150 (1970). In that case, the Supreme Court stated that a plaintiff has standing to sue if he is able to show: (1) injury in fact, economic or otherwise; and (2) that the interest sought to be protected by the complainant is arguably within the zone of interest to be protected by the statute in question. *Id.* at 152-53.

Northrop Grumman easily satisfies the "injury in fact" requirement, as demonstrated in the verified Complaint.   Unless restrained by this Court, NASA will disclose the pricing information in contention, and thereby irreparably and irretrievably damage Northrop Grumman.

Northrop Grumman similarly satisfies the "zone of interest" requirement.   Congress intended Exemption 4 of FOIA to protect "persons who submit financial or commercial data to government agencies from the competitive disadvantages which would result from its publication." *National Parks, supra*, 498 F.2d at 768; *see also Public Citizen Health Research Group v. Federal Drug Admin.*, 704 F.2d 1280, 1291 (D.C. Cir. 1983).

**B.      The Court Has the Authority to Grant the Relief Requested**

As demonstrated below, NASA's disclosure of the information in contention would be illegal.  If, upon review of an agency action, this Court finds that the agency acted, or is about to act, unlawfully, arbitrarily or capriciously, the Court must declare the agency action illegal, and set it aside.  5 U.S.C. § 706 states:

> The reviewing court shall -- . . . (2) hold unlawful and set aside agency action, findings, and conclusions found to be - (A) arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.

This standard of review applies to a reverse FOIA action such as the present case and authorizes this Court to scrutinize NASA's actions.  See *Chrysler Corp., supra*, 441 U.S. at 317-318; *Camp v. Pitts*, 411 U.S. 138, 142 (1972); *National Org. for Women, Washington, D.C. Chapter v. Social Security Admin.*, 736 F.2d 727 (D.C. Cir. 1984).  If NASA's actions are at best arbitrary or capricious, or at worst plainly illegal, this Court must grant the injunctive relief requested.

The Administrative Procedure Act further authorizes the injunctive relief requested in this case. 5 U.S.C. § 705, entitled "Relief Pending Review," provides:

> On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court . . . may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

Accordingly, the Court has the authority to grant the relief plaintiff is requesting in this cause of action.

## C.      Plaintiff Meets the Legal Criteria for Preliminary Injunctive Relief

Four factors govern the granting or denial of a preliminary injunction preserving the *status quo* pending litigation:

(1)      A substantial likelihood of success on the merits;

(2)      Irreparable injury in the absence of relief;

(3)      That the injunction would not substantially harm the interests of others; and

(4)      That the public interest would be served by granting the injunction.

*Cityfed Financial Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995); *WMATA v. Holiday Tours*, 559 F.2d 841 (D.C. Cir. 1977); *Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n*, 259 F.2d 921 (D.C. Cir. 1958). The District Court balances the merits of the litigant's case in these four areas in deciding whether to grant an injunction. *Cityfed, supra*, 58 F.3d at 747. In the present case, Plaintiff satisfies all four criteria and thus is entitled to a preliminary injunction to prevent the release of its confidential information.

### 1.      Northrop Grumman Systems Corporation is Likely to Succeed on the Merits

Northrop Grumman has a high probability of success on the merits.   Confidential contractor pricing information is exempt from disclosure under FOIA, and in turn prohibited from disclosure by the Trade Secrets Act.   If NASA is not preliminarily enjoined from releasing this information, Northrop Grumman will be irreparably injured, and any permanent relief granted in this action would be meaningless.

       *a.*     *The Legal Standard for Determining Confidentiality of Information Under FOIA Exemption 4*

Northrop Grumman Systems Corporation's pricing and technical information falls within FOIA Exemption 4 and should not be disclosed under the criteria established in this Circuit in *National Parks*, as clarified in *McDonnel Douglas*.   Exemption 4 covers trade secrets and "commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4).   This exemption is co-extensive with the Trade Secrets Act, which prohibits Federal Government employees from disclosing confidential information that "concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association."   18 U.S.C. § 1905; *see General Electric Co. v. Dept. of Air Force*, 648 F.Supp.2d 95 (D.D.C. 2009); *Canadian Commercial Corp. v. Dep't of Air Force*, 514 F.3d 37, 39 (D.C. Cir. 2008) (*citing CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1151 (D.C. Cir. 1987)).   "Accordingly, when a person can show that information falls within Exemption 4, then the government is precluded from releasing it under the Trade Secrets Act." *McDonnell Douglas Corp. v. NASA*, 180 F.3d 303, 305; *see Canadian Commercial*, 514 F.3d at 39.   Thus, the Trade Secrets Act prohibits release of any information

covered by Exemption 4. *CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1151 (D.C. Cir. 1987) (scope of Trade Secrets Act is at least coextensive with FOIA Exemption 4).

The United States Court of Appeals for the D.C. Circuit has set out a multi-part test for determining whether information is "confidential." The agency (or, later, the court) must first determine whether the information at issue was submitted to the government voluntarily. *See McDonnell Douglas*, 180 F.3d at 304. If so, the agency must determine whether the submitted information is "the kind of information 'that would customarily not be released to the public by the person from whom it was obtained.'" *Id.* (*quoting Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 879 (D.C. Cir. 1992) (*en banc*)). If so, the information is "confidential" and thus precluded from disclosure by FOIA Exemption 4 and the Trade Secrets Act. *Critical Mass*, 975 F.2d at 880.

If the submission of the information to the government was compelled, however, the agency must determine whether disclosure "would be likely either (1) to impair the government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained." *McDonnell Douglas*, 180 F.3d at 305 (*citing Critical Mass*, 975 F.2d at 878-80; *Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974) ("*National Parks I*")). If the submitter can show either impairment or substantial competitive harm, then the information is "confidential" and therefore precluded from disclosure by FOIA Exemption 4 and the Trade Secrets Act. *National Parks I*, 498 F.2d at 770-71; *see also General Electric Co., supra*.

As a preliminary matter, confidential and proprietary business information that "relate[s] to trade secrets" is clearly within the scope of Exemption 4 and the Trade Secrets Act. 18 U.S.C. § 1905; *see General Electric Co. v. Dept. of Air Force*, 648 F.Supp.2d 95 (D.D.C. 2009);

*Canadian Commercial Corp. v. Dep't of Air Force*, 514 F.3d 37, 39 (D.C. Cir. 2008) (*citing*

*CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1151 (D.C. Cir. 1987)). ████████ at issue

meet the more stringent *National Parks I* test and thus, under FOIA Exemption 4 and the Trade

Secrets Act, must be protected from release.

        b.      ████████ *are exempt from release under the National Parks test,*
            *as their release is likely to cause substantial competitive harm to NGAS.*

Under the test set forth in *National Parks I*, information is "confidential" and cannot be

released if its disclosure is likely to cause substantial harm to the submitter's competitive

position or to impair the agency's ability to obtain such information in the future. ████████

satisfy this standard.

It is common as basic preparation for submitting a proposal to try to gauge, from publicly

available information, ████████████████████████. █

████████████████████████████████

████████████████████████████.

████████████████████████████

██████████████████████████

████████████████████████████

███████████. ███████████████

████████████████████████████

████████

██████████████████████████████

██████████████████████████████



If ▮▮▮▮▮▮▮▮ were publicly released, that information would have two primary impacts on NGAS's competitors. First, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Second, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. In NGAS's experience▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ are always closely held.  Just as NGAS protects ▮▮▮▮▮▮▮▮

███████████████████████████████████████████████████████

███████████████████████████████

The ██████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████. Release

of ███████████████ to NGAS's competitors would weaken its ability to remain competitive,

and would decrease NGAS's competitive ability to successfully compete on current and future

procurement opportunities.

███████████████████████████████████████████████████

█████████████ ██████████████████████████████ ██████████

████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████

Still another layer of information can be ascertained from ███████████████████

████████████████████████. The ███████████████████████████████████

██████████. That information ████████████████████████████████

█████████████████████████████████████████████████████████████

████████████. An alert competitor would capitalize on this information by ████████████

█████████████████████████████████████████████████████████████

█████████████████ Again, this information would permit ████████████████

██████████████████████████████████████████████████. Thus, the

information is protected from release. *Greenberg v. FDA*, 803 F.2d 1213, 1218 (D.C.Cir.1986)

(combination of allegedly confidential information and publicly available information provided

sufficient evidence of competitive harm to defeat summary judgment motion).

        *c.*    *The release of* █████████████ *likely will cause NGAS significant competitive harm*

NASA does not directly rebut NGAS's contention that it is likely that competitors could

use ██████████████████. Instead, NASA argues that:



████████████████ NASA's conclusion that ████████████████is obsolete or of

little relevance ████████████████is erroneous, as addressed further below.  But as an

initial matter, NASA's statement that competitive disadvantage with respect to one evaluation

factor – cost – does not constitute likely, substantial competitive harm, is plainly baseless.

Without doubt, competitions for federal contracts may involve multiple evaluation factors, of which pricing information may very likely relate to only one – cost/price. However, the precedent in this circuit is clear that a likely competitive disadvantage in cost/price evaluations constitutes likely competitive harm within the meaning of FOIA Exemption 4. *McDonnell Douglas Corp. v. NASA*, 180 F.3d 303, 1999 U.S.App. LEXIS 14174 (D.C. Cir. 1999).

The D.C. Circuit later expanded on its position regarding this "only one factor" argument in *McDonnell Douglas Corp. v. Air Force*, 375 F.3d 1182, ___ (D.C. Cir. 2004):

> Finally, the Air Force argues that, even if it does rebid the contract, McDonnell Douglas is unlikely to suffer competitive harm because the new bid price "would be only one of several evaluation factors for award" of the new contract. . . .
>
> Simply put, release of the option year prices in the present contract would likely cause McDonnell Douglas substantial competitive harm because it would significantly increase the probability McDonnell Douglas's competitors would underbid it in the event the Air Force rebids the contract. See Gulf & W. Indus., 615 F.2d at 530 (substantial competitive harm likely where disclosure "would allow competitors to estimate, and undercut, its bids"). Because price is the only objective, or at least readily quantified, criterion among the six criteria for awarding government contracts, submitting the lowest price is surely the most straightforward way for a competitor to show its bid is superior. Indeed, price is by statute the only factor that "must be considered in the evaluation of a proposal." 10 U.S.C. § 2305(a)(3)(A)(ii) (emphasis added). Whether price will be but one of several factors to be weighted equally in any future RFP, therefore, is necessarily somewhat speculative.

A submitter of data need not prove that the release of information will inevitably, irrevocably harm its competitive position. *Id.* at ___. Such proof would be impossible to adduce. All that a submitter need show to fall within Exemption 4 is that the release of information is

likely to cause the submitter substantial competitive harm in making future sales. And competitive disadvantage as to any factor that likely will be used in competing for future sales constitutes a substantial competitive harm within the meaning of Exemption 4.

This makes plain sense. Even though a given procurement might involve six factors, a company would be competitively disadvantaged by giving its competitors information that may enable them to be more highly rated on any one of those six factors. It is not enough for the agency to say that the submitter might, by dint of its superiority with respect to the other factors, still be able to win. In this sample future competition involving six evaluation factors, a submitter disadvantaged as to price might find it necessary to offer technical solutions or services beyond what was sought in the solicitation in order to win, knowing it may be underbid on price. Thus the submitter could be in a position of realizing narrower profit margins on its future sales, which would itself constitute substantial competitive harm. The point is that the submitter likely will be competitively disadvantaged, not that it is guaranteed to lose.

    *d.* ███████████████████████████████████████
███████████████████████████████████████

NASA argues in its Notice of Intent to Release Information that the Contract was unique, that there will be no follow-on James Web Space Telescope, and that future contracts, if any, for space-based observatories will have far different requirements. NASA fundamentally misunderstands ████████████████████████████, and as a result, fundamentally misunderstands the importance of████████████████ ████████████ ██████████████████████████████████████████ ████████████████████. Many of these future procurements will be competitive.

Divisions within NGAS divisions include Autonomous Systems, Military Aircraft

Systems, Military Surveillance & Targeting, Space Systems, and Strike.   NGAS programs

include military aircraft, autonomous and space systems and next-generation technologies that

are used for a wide range of missions, including intelligence, surveillance and reconnaissance;

protected communications; battle management; strike operations; electronic warfare; missile

defense; Earth observation; space science; and space exploration.



. First,

NGAS anticipates

NGAS also has prepared



In addition, ████████████████████████████████████████████

███████████████████████████

NGAS anticipates, ███████████████████████████████

████████████████████████████████████████. Thus, to be

competitive, NGAS ████████████████████████████████████

████████████████.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

Thus, the release of ███████████████████████████████████

████████████████████ a competitive disadvantage to NGAS in competitions with a

variety of agencies.  While NASA undoubtedly has superior information as to its own

procurement plans, NASA is only one of NGAS's many customers, and space-based observation

is only one of NGAS's many capabilities.  Release here would cause competitive harm to the

entire Sector.

e.   ▓▓▓▓▓▓▓ *at issue are not hypothetical examples; rather, they are*

NASA states in its Notice that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓ This is inaccurate.  As explained above, ▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

NASA argues that "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. ▓▓ ▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ The fact remains that the ▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓, and release of that information could cause serious competitive harm to NGAS.

NASA also argues that ███████████████████████████ ████████████." This proposition should be entirely irrelevant.  If ████████████ released, ███████████████████████████████████████ ███████████████████

      *f.*   ████████████████████████████

NASA argues ██████████████████████████████████████, and it states explicitly in Note 6 that ███████████████████████████ ████████████████████████████████████████  In fact, however, ███████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ██████████████████

Given the ███████████████████████████████████████, NGAS puts ████████████████████████████████████ ███████.  Decisions as to some ████████████████ can be made so as to ensure that █████████ ███████████████████.  While it is not possible for a company to ensure ████████████ ████████████████████████████, it is possible for a company ████████████ ████████████████████████████████████████ ███████████.

Thus, as its competitors will readily appreciate, NGAS ████████████████████ ████████████████████████████████████.  Rather, NGAS was also ████████████████████████████████████████

███████████████████████.

## 2.      Northrop Grumman Will Suffer Irreparable Harm if Disclosure Occurs.

For many of the reasons described in detail herein, Northrop Grumman will suffer

irreparable harm if ██████████████ are disclosed to its competitors, allowing NGAS's

competitors ███████████████████████████████████

███████████████. The harm Northrop Grumman will suffer in this case is similar

to the harm faced the plaintiff in *McDonnell Douglas*, *supra*.

In *McDonnell Douglas*, the Court of Appeals for the D.C. Circuit found that the

contractor would suffer substantial competitive harm if its prices were released in response to a

FOIA request. The case involved a NASA 1995 solicitation for Medium Light Expendable

Launch Vehicle Services ("Med-Light"). The solicitation requested prices for several contract

line items ("CLINs"), including missions that would take place as late as 1999. No other

contractors bid on the procurement. NASA awarded the contract to McDonnell Douglas

Aerospace ("MDA") in February 1996.

In August 1996, FOIA Group, Inc., the Requestor here, submitted a FOIA request to

NASA for the Med-Light contract. NASA rejected MDA's objections to the release of unit

prices, cost figures for specific launch service components and overhead, labor rates, profit

figures and percentages, incentive amounts, and billing arrangements.

In response to NASA's Notice of Intent to release MDA's contract, MDA filed a reverse

FOIA suit in the U.S. District Court of the District of Columbia, seeking to block the release of

its unit prices and other sensitive information. MDA based its suit on the ground that the

information requested was confidential commercial or financial information protected from

release by FOIA Exemption 4. MDA then argued, in part, that the information fell within

Exemption 4 under the *National Parks* test because disclosure likely would impair the Government's ability to obtain such pricing information in the future and would likely cause substantial harm to MDA's competitive position. *McDonnell Douglas*, 981 F. Supp. at 15 16.

MDA asserted that it would suffer competitive harm in two ways. First, release of MDA's pricing information would permit its commercial customers to "ratchet down" its prices more effectively. In support of its position, MDA submitted affidavits that explained in detail how MDA's competitors could use the knowledge gained from the NASA contract pricing information to negotiate more effectively with MDA. *Id.* at 16. Second, release of the information would help its domestic and international competitors underbid MDA. Again, the affidavits MDA submitted explained in detail how extremely competitive the commercial launch market was and how domestic competitors bidding on U.S. Government contracts, as well as foreign competitors in the international market, would be able to underbid MDA through knowledge gained from the NASA contract pricing information. *Id.*

As detailed throughout this Memorandum, NGAS faces nearly a nearly identical harm here. Release ███████████████████████████████████████████████
██████████████████ Just as the plaintiff's competitors in *McDonnell Douglas* were able to underbid the plaintiff as a result of the disclosure of its pricing information, NGAS's competitors
████████████████████████████████████████████████████████████
████████████████████████████. Thus, the facts in the instant case fall squarely within the facts of the *McDonnell Douglas* case, and the DC Circuit's holding as described below similarly should govern in this case.

3.     **Issuance of the Injunctive Relief Requested Will Have No Adverse Effect on Any Other Party.**

NASA would not be adversely affected by the issuance of an injunction.  In fact, NASA is likely to benefit from the issuance of injunctive relief due to its positive effect on the competitive environment in federal procurement, and in preserving the integrity of the procurement process.  The preservation of Northrop Grumman System Corporation's proprietary rights in its pricing and technical information will assure companies contracting with the Government that confidential information contained within contracts will not be disclosed to their competitors.

Public disclosure of Northrop Grumman Systems Corporation's confidential information would be irreversible and irreparable.  NASA's interests, if any, in prompt disclosure are far outweighed by the immediate harm to Northrop Grumman.  The Court should preserve the status quo until the merits of the case can be decided.

4.     **Issuance of the Injunctive Relief Requested Will Have No Adverse Effect on the Public Interest.**

The public interest lies in preserving competition in Government contracts, and in preserving the integrity of the procurement process.  The issue here is whether to disclose sensitive pricing information to the public and allow Northrop Grumman's competitors to obtain a competitive advantage over Northrop Grumman.  Such disclosure is contrary to the intent and purposes of FOIA as set forth in Exemption 4.

In *Honeywell Info. Sys., Inc. v. National Aeronautic & Space Admin.*, Nos. 76-353, 76-377 (D.D.C. 1976), the court recognized that the public interest was not served by disclosure of confidential data to a company's competitor.  Similarly, there is no public interest here which could in any way be adversely affected by the Court's issuance of injunctive relief.

Northrop Grumman has no adequate remedy at law to protect its substantial interest raised in this litigation, and no forum other than the United States District Court can grant Plaintiff the relief it seeks herein.

## CONCLUSION

For the foregoing reasons, Plaintiff Northrop Grumman Systems Corporation respectfully requests the Court grant its Application for a Temporary Restraining Order and its Motion for a Preliminary Injunction.

Dated: September ___, 2017                    Respectfully submitted,

                                              By: _____ w/permission
                                                  Richard J. Vacura, D.C. Bar No. 48014
                                                  Morrison & Foerster LLP
                                                  1650 Tysons Boulevard
                                                  Suite 400
                                                  McLean, VA 22102
                                                  Telephone: 703.760.7700

                                                  Attorney for Plaintiff
                                                  Northrop Grumman Systems Corporation

Of Counsel:
Tina D. Reynolds, D.C. Bar No. 456952
Kathy C. Weinberg, D.C. Bar No.
R. Locke Bell, D.C. Bar No. 1026923
Morrison & Foerster LLP
1650 Tysons Boulevard
Suite 400
McLean, VA 22102
Telephone: 703.760.7701

## DECLARATION OF ████████████

I, ██████████, declare and state under penalty of perjury as follows:

1.     I am employed by Northrop Grumman Systems Corporation in its Aerospace Sector ("NGAS") as ████████████████, My business address is One Space Park (Bldg E1/5017), Redondo Beach CA, 90278.

2.     In my role as ████████████████, I have responsibility for leading the Space Systems strategy development efforts.

3.     I have been employed by NGAS for 26 years and have worked in the aerospace and defense industry for 31 years.

4.     As a result of my experiences in as an Air Force acquisition officer, and an industry business development and strategy professional, I am familiar with competitive conditions in the aerospace and defense industry with respect to NGAS products and programs. I also have detailed personal knowledge regarding the competitive opportunities NGAS is interested in pursuing with government and commercial customer.

5.     ████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████
████████████████████████████████████
████████████████████████

6.     NGAS is one of three Northrop Grumman Sectors.  NGAS is comprised of divisions, which include Autonomous Systems, Military Aircraft Systems, Military Surveillance

1

& Targeting, Space Systems, and Strike.   NGAS programs include military aircraft, autonomous and space systems and next-generation technologies that are used for a wide range of missions, including intelligence, surveillance and reconnaissance; protected communications; battle management; strike operations; electronic warfare; missile defense; Earth observation; space science; and space exploration.

7. ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████

█ ██████████████████████████

█ ████████████████

█ ███████████████████████

█ ██████████████████████

█ ██████████████

█ █████████████████████████████

█ █████████████

█ ████████

█ ███████████████

█ ██████████

8. ████████████████████████████████████

████████████████████████████████████████

██████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████



9. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮

10. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮. ▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮.

11. Further, our U.S. Government customers are increasingly using the "lowest price technically acceptable" evaluation method. This "LPTA" approach has made, and will continue to make, price increasingly important, and even small differences in price can affect billions of dollars of revenue.

3

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

12.   Our competitors include all of the first- and second-tier defense contractors, which will compete fiercely for these programs.  Any advantage created by knowledge of ███████

███████████████████████████████████████████████████

13.   In short, the release of information ██████████████████████████

████████████████████████████       ████████████████████

██████████████████. NASA is only one of NGAS's many customers, and space-based observation is only one of NGAS's many capabilities.  Release here would likely cause competitive harm to the entire Sector.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 13th day of September, 2017

████████████████████████████

4

## DECLARATION OF ████████████

I, ████████████, declare and state under penalty of perjury as follows:

1.    I am employed by Northrop Grumman Systems Corporation in its Aerospace Systems Sector ("NGAS") as ████████████████████████████. My business address is One Space Park, M/S E2/4080A, Redondo Beach, CA 90278.

2.    As ████████████████████████████, I have responsibility for ████████████████████████████████████████ ████████.

3.    I have been employed by NGAS for 35 years, working in the aerospace and defense industry.

4.    As a result of my involvement in numerous competitive procurements during my tenure with NGAS, I am familiar with competitive conditions in the aerospace and defense industry, in general and particularly with respect to the Government market. I also have detailed personal knowledge regarding NGAS's policies and procedures for the protection of competition-sensitive information.

**A.    Purpose of Declaration**

5.    By letter dated March 24, 2017, the National Aeronautics and Space Administration ("NASA") notified NGAS that NASA had received a request under the Freedom of Information Act ("FOIA") for the release of information pertaining to Contract NAS5-02200 (the "Contract"), which pertains to the James Webb Space Telescope ("JWST") program. The request was for the Contract with Attachments, and Modifications from 2004-2009. NASA

invited NGAS to review the documents proposed to be released and to submit any objections to the release.

6.   NGAS responded in an April 7, 2017 letter, in which it requested that certain information be withheld under FOIA Exemption 3 (protected by statute; specifically, the Arms Export Control Act and the Export Administration Act) and Exemption 4 (trade secrets and commercial or financial information that is privileged or confidential).   NGAS provided proposed redactions to the Contract, Attachments, and Modifications along with the letter, which explained in detail the rationale for the proposed redactions.

7.   NASA' responded with an August 30, 2017 Notice of Intent to Release Information ("Notice").   In the Notice, NASA agreed in principle not to release any of the information considered to be export controlled and therefore covered by FOIA Exemption 3.   It described this information as encompassing Attachments L and T (which NGAS had identified as export controlled), plus additional information that NASA's project export control office personnel had deemed controlled.

8.   With respect to Exemption 4, the Notice stated that NASA intends to release some of the information that NGAS had requested be redacted.   In some instances NASA indicated that it would release in part and redact in part ████████████████████████

████████████████.   To date, NASA has not provided to NGAS the redacted version of the Contract and Attachments to be released to the FOIA requester.

9.   This declaration focuses in particular on one category of information that NASA intends to release: ███████████████████████████████████████

2

████████████████████████████████████████

10.   Below I describe in more detail the reasons that this information qualifies for withholding under FOIA Exemption 4 and the factual basis for this position.

**B.**     **NGAS and its business, and competition in the industry**

11.   Northrop Grumman Corporation ("NG") is one of the country's largest defense contractors.  Northrop Grumman Systems Corporation is a subsidiary of NG, and NGAS is one of three major sectors of Northrop Grumman Systems Corporation.  NGAS is subdivided into divisions that include Autonomous Systems, Military Aircraft Systems, Military Surveillance & Targeting, Space Systems, and Strike.  NGAS's programs include military aircraft, autonomous and space systems, and next-generation technologies that are used for a wide range of missions from intelligence, surveillance and reconnaissance; protected communications; battle management; strike operations; electronic warfare; and missile defense to Earth observation, space science, and space exploration.

12.   NGAS's financial strength combined with its core competencies makes it a strong competitor for aerospace and defense products and services in the federal Government marketplace, which is where the majority of NGAS's work is performed.

13.   NGAS faces actual, intense competition for the products and services it provides to the Government and competes with several other large U.S. aerospace and defense companies for U.S. Government work.  Its principal competition includes ███████████████ ███████████

14.   NGAS regularly competes with these and other companies, each of which can and does provide the same or similar products and services.  Once the information sought under the

FOIA request is in the public domain, it will allow NGAS's competitors to gain unfair

competitive advantages over NGAS in upcoming competitive acquisitions.

15.   The FOIA requester here is a commercial service in the business of requesting

contract information under FOIA on behalf of industry competitors.  Thus, NGAS's highly

sensitive information will be provided to at least one of NGAS's competitors once it is released.

**C.   Nature and Scope of the Information to Be Disclosed**

16.   ████████████████████████████████████████████

██████████████████████████████████████████████████.

████████████████████████████████████████████████

'████████████████████████████████████████████████

████████████████  ██ █ ██████████████  █ ████████  ████

17.   ████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████  ████████████  ██████████████

18.   ██████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

19.   ████████████████████████████████████████████████

██████████████████████████████████████████████████

4

████████████████████████████████████████████████

████████  ██ ██████████████████████



20.

21.

22.

23.

5

███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████

**D.**   **Specific Harm Likely from Disclosure**

24.   ████   ████████████████████████████████
████████████████████████████████████████

25.   ████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████████
████████████   ██████   ███████████████████████████
██████████

26.   ████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████
████████████████████████████

6

██████████████████████████████████████████████

27. ███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████

**E.    Confidentiality of Information**

28. ███████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████.

**F.    Summary**

29. ███████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████ Such a revelation would severely compromise

NGAS's competitive position ███████████. With this knowledge, competitors would ████

████████████████████████████████████████████

████████████████████████████████. NGAS therefore reiterates its request

that ████████████████████████████.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 13th day of September, 2017

7

████████████████████████████████████████████████
██████████████████



## DECLARATION OF ███████████

I, ███████████, declare and state under penalty of perjury as follows:

      1.    I am employed by Northrop Grumman Systems Corporation in its Aerospace

Systems Sector ("NGAS") as ████████████████████████████████████████

████████████████████. My business address is P.O. Box 509066 M/S L046AE/SD6A,

San Diego, CA 92150-9066.

      2.    In my role as █████████████████████, I have responsibility for cost

analysis that supports the strategy organization, including Position to Win (PTW) analysis.

      3.    I have been employed by NGAS for 5 years and have worked in the aerospace and

defense industry for 12 years.

      4.    As a result of my experience with NGAS and knowledge of the industry, I am

familiar with competitive conditions in the aerospace and defense industry, in general and

particularly with respect to the Government markets.  I also have detailed personal knowledge

regarding the process that NGAS uses to gather and use publicly available competitive

intelligence about other companies in the marketplace.

      5.    ████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████.

      6.    ████████████████████████████████████

██████████████████████████████████████████████

1

████████████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████

7.   ████████████████████████████████████████████

█████████████████████████████████████████████████████

████

8.   █ ████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████

9.   ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████

10.  ████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████

11.  ██████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

2

████████████████████████████████████████████████████
████████████████████



12.

13.

14.

15.

16.  ████████████████████████████████████████

████████████████████████████████████████████

███████████████████

17.  In sum, this information is highly competition sensitive, and its release will

adversely impact NGAS on current and future competitions.  ██████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the ⅃Ⴈ day of September, 2017

████████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████████████████████████